UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J'MIN ATIBA WARD,

Plaintiff,

-against-

CITY OF MIDDLETOWN, COUNTY OF ORANGE, STEVEN BROCKETT, *City of Middletown Judge*, CARL DUBOIS, *Orange County Sheriff*, KENNETH DECKER, *Orange County Jail Administrator of Corrections*, DUANE LOPEZ, BRIAN SHANLEY, *Special Operations Group*, JASON KAHMAR, *Special Operations Group*, CHRIS DESENA, *Special Operations Group*, DANIEL GREER, *Special Operations Group*, ANTHONY WEED, *Special Operations Group*, JOHN TRAZINO, *Special Operations Group,* RAMON BETHANCOURT, *Middletown Police Chief*, PAUL BRAHM, *Special Operations Group*, VINCENT IANNUZZI, *Special Operations Group*, ERIC J. HARGETT, *Middletown Police Officer*, and MICHAEL KANIA, *Special Operations Group*,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 02/24/2022

No. 17 Civ. 5248 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff J'min Atiba Ward, currently incarcerated at the Eastern New York Correctional Facility, brings this action under 42 U.S.C. § 1943, alleging that law enforcement executed an illegal search warrant that resulted in his arrest and subsequent state conviction for criminal possession of controlled substances, in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments. He sues Defendants City of Middletown, Steven Brockett, Ramon Bethancourt,[1] Eric Harget (collectively, the "Middletown Defendants"), County of Orange, Carl Dubois, Duane Lopez, Kenneth Decker, Brian Shanley, Jason Kahmar, Chris DeSena, Daniel Greer, Anthony Weed, John Trazino, Paul Brahm, Vincent Iannuzzi, and Michael Kania

[1] The Middletown Defendant state that the correct spelling is "Bethencourt." (ECF No. 82 at 1 n.1.)

(collectively, the "County Defendants"). Presently pending before the Court are the Middletown and County Defendants' (collectively, "Defendants") motions to dismiss *pro se* Plaintiff's Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 80 & 86, respectively.) For the following reasons, the Court GRANTS Defendants' motions to dismiss.

**BACKGROUND**

The following facts are derived from the SAC or matters of which the Court may take judicial notice[2] and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.

On April 20, 2017, the City of Middletown Police Department ("CMPD"), executed a "no knock" search warrant at *pro se* Plaintiff's residence located at 41 Woodlake Drive, City of Middletown, New York. (*See* SAC at 8, ECF No, 50.) The warrant, signed by City of Middletown Judge Stephen Brockett, was addressed to any officer of the CMPD, the NYS Police, and any member of the Orange County Sheriff's Office Special Operation Group ("SOG"). (*See* Lagitch Decl., Ex. B, ECF No. 87-2.) While SOG secured the perimeter of the residence, the CMPD secured and stored all evidence recovered from the scene. (*See* Lagitch Decl., Ex. C at 8:12–12:23 (excerpts of Nov. 14, 2017 Suppression Hearing Transcript), ECF No. 87-3). The execution of the search warrant resulted in the discovery of narcotics, marijuana, cash, and drug paraphernalia. (*See*

[2] The Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court may also consider documents subject to judicial notice, such as public records. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Awelewa v. New York City*, No. 11 CIV. 778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of public records, including 'arrest reports, criminal complaints, indictments, and criminal disposition data.'"); *Blount v. Moccia*, No. 1:16-CV-4505-GHW, 2017 WL 5634680, at *2 n.5 (S.D.N.Y. Nov. 21, 2017) (taking judicial notice of grand jury indictment and collecting cases); *Colliton v. Bunt*, No. 15-CV-6580 (CS), 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016), *aff'd*, 709 F. App'x 82 (2d Cir. 2018) (taking judicial notice of transcript of guilty plea and sentencing).

*id.*) After the discovery, *pro se* Plaintiff told the officers, "That's it you got me, that's crack. . . . The crack is mine." (Lagitch Decl., Ex. D at 5 (Dec. 6, 2017 Decision & Order), ECF No. 87-4.))

After his arrest, *pro se* Plaintiff moved to suppress the evidence at the Orange County Court, contending that the warrant was illegal on its face because it was issued to members of SOG—some of whom are correctional officers, not police officers—in violation of N.Y. Crim. Proc. Law § 690.25. The Orange County Court denied his motion to suppress on December 6, 2017. (*Id.* at 1.) It concluded that, although the SOG team was "erroneously listed in the search warrant" [they] "did not execute the warrant." (*Id.* at 4.) He determined that "[a]ll of the evidence was searched for, discovered by, and seized by police officers of the [CMPD]." (*Id.* at 5.)

The following day, *pro se* Plaintiff pleaded guilty to criminal possession of a controlled substance in the first degree. (*See* Lagitch Decl., Ex. E (Dec. 7, 2017 Plea Allocution Tr.), ECF No. 87-5.) As part of his plea, *pro se* Plaintiff reserved his right to appeal the denial of his motion to suppress. (*See id.* at 5.) *Pro se* Plaintiff was sentenced to twelve years' imprisonment and five years' post-release supervision. (*See* Lagitch Decl., Ex. F, (March 5, 2018 Uniform Sentence & Commitment), ECF No. 87-6.)

*Pro se* Plaintiff subsequently appealed the denial of his motion to suppress. The Second Department denied *pro se* Plaintiff's appeal on October 23, 2019, holding that "the participation of members of the [SOG] in the execution of the search warrant did not invalidate the search or otherwise require suppression of the physical evidence at issue." *People v. Ward,* 110 N.Y.S.3d 451, 454 (2d Dep't 2019) [hereinafter, "*Ward I.*"] The New York Court of Appeals denied *pro se* Plaintiff's application for leave to appeal on January 17, 2020. *People v. Ward*, 34 N.Y.3d 1133 (N.Y. 2020). On reargument before the Second Department, while the court vacated and recalled its prior decision, it again determined that the search was proper on May 20, 2020. *People v. Ward*,

123 N.Y.S.3d 634, 637 (2d Dep't 2020) [hereinafter, "*Ward II*."] *Pro se* Plaintiff did not move for leave to appeal this latter decision.

On March 2, 2020, *pro se* Plaintiff filed a Petition for Writ of Habeas Corpus in the Southern District of New York. (*See Ward v. Piccolo*, 20 Civ.1899 (PMH) (AEK), ECF No. 1.) The Writ is currently pending before the Honorable Philip M. Halpern and challenges the validity of the search warrant issued by Judge Brockett and the legality of the search conducted under the warrant on April 20, 2017.

On November 30, 2020, *pro se* Plaintiff filed his SAC, alleging that Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights. (SAC, ECF No 50.) After being served with the summons and SAC, Defendants sought leave to file their respective motions to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 73 & 76.) Defendants filed their respective briefing and *pro se* Plaintiff's on June 24, 2021: the Middletown Defendants their notice of motion (ECF No. 80), declaration in support with accompanying exhibits (Smith Decl., ECF No. 81), memorandum in support ("Middletown Motion," ECF No. 82), and reply affirmation (ECF No. 84); the County Defendants their notice of motion (ECF No. 86), declaration in support with accompanying exhibits (Lagitch Decl., ECF No. 87), memorandum in support ("County Motion," ECF No. 88), and reply declaration ("County Reply," ECF No. 93); and *pro se* Plaintiff his two affirmations in opposition ("First Opposition," ECF No. 91 & "Second Opposition," ECF No. 95).

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to

dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. *Pro se* litigants are not exempt from these pleading standards, but courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). *Pro se* complaints are read with a "special solitude" to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted).

In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (internal citation omitted).

**II. 42 U.S.C. § 1983 Claims**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121,

127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

**DISCUSSION**

The Court liberally construes *pro se* Plaintiff's SAC to assert claims under 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment right to be free from unlawful searches and seizures, his Fifth Amendment right against self-incrimination, and his Fourteenth Amendment right to liberty and due process. (*See* SAC at 8–9.) The Court liberally construes *pro se* Plaintiff's SAC to seek declaratory judgment that Defendants violated his constitutional rights and $10,000,000 in monetary damages. (*Id.* at 9.)

Defendants move to dismiss *pro se* Plaintiff's SAC on three grounds. First, Defendants contend that *pro se* Plaintiff's damages claims are barred by the favorable termination rule set forth in *Heck v. Humphrey,* 512 U.S. 477 (1994). (Middletown Mot. at 21–23; County Mot. at 13–15.) Second, Defendants assert that collateral estoppel bars *pro se* Plaintiff from litigating issues already determined in his state criminal conviction. (Middletown Mot. at 16–20; County Mot. at 16–18.) And finally, Defendants move to dismiss *pro se* Plaintiff's claims under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694 (1978), arguing that he fails to plead any facts showing that either the City of Middletown or the County of Orage violated any his constitutional rights. (Middletown Mot. at 23–27; County Mot. at 18–21.) After due consideration, the Court agrees with Defendants that *pro se* Plaintiff's SAC must be dismissed.

**I. *Pro se* Plaintiff's damages claims are barred by *Heck* and his analogous claims for declaratory judgment are similarly barred by collateral estoppel**

Defendants first argue that *pro se* Plaintiff's damages claims are barred by the rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court considered whether a state prisoner who sought monetary damages arising from an alleged unconstitutional conviction could pursue a claim under § 1983. *Id.* at 486–87. The Supreme Court determined that

> in order to recover damages for an alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a court's issuance of a writ of habeas corpus.

*Id.* at 486–87. The rule articulated in *Heck*—also known as the "favorable termination rule"—therefore precludes the use of § 1983 to seek damages if a judgment in favor of the plaintiff "would necessarily imply the invalidity" of a prior state or federal criminal conviction or sentence. *Id.*

Defendants similarly argue that *pro se* Plaintiff's claims for declaratory judgment are barred by collateral estoppel because he seeks to relitigate issues that were, or could have been, raised previously in the criminal case against him. Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)).

Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party

against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted); *see also Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Here, *pro se* Plaintiff's Fourth and Fourteenth Amendment claims stem from the alleged unreasonable search of his home based on an illegal warrant, and his Fifth Amendment claim relates to the incriminating statement he uttered during such search. The Court will analyze these claims in that order.

*A. Unreasonable Search and Seizure Claims*

1. <u>Fourth and Fourteenth Amendment damages claims are barred by *Heck*</u>

Courts applying the *Heck* doctrine with respect to alleged unlawful searches must assess "whether a prisoner's victory in a § 1983 suit would *necessarily demonstrate* the invalidity of his conviction or sentence. . . ." *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007) (emphasis in original). "[T]hat a prisoner's success might be merely helpful or *potentially* demonstrative of illegal confinement is, under this standard, irrelevant." *Id.* (emphasis in original).

In a footnote, the Supreme Court clarified that, under certain exceptional circumstances, "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Id.* at 487 n.7. The *Heck* court cited the independent source, inevitable discovery, and harmless error doctrines as examples of exceptions to the general

rule, because actions involving those doctrines "would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* (emphasis in original).

These exceptions, however, are not applicable to the case at bar. District courts have found that, when a § 1983 action targets a single episode involving a single search, such a case would necessarily demonstrate the invalidity of a conviction based on that search. *See, e.g., El v. City of New York*, No. 14-CV-9055-GHW, 2015 WL 1873099, at *4 (S.D.N.Y. Apr. 23, 2015) (collecting cases). *Heck* bars such scenario because "the entire evidentiary basis for the charged offense derives from . . . a single search that is now being questioned as part of a § 1983 action." *Clayton v. City of Poughkeepsie*, No. 06 CIV.4881 SCR, 2007 WL 2154196, at *4 (S.D.N.Y. June 21, 2007).

Here, *pro se* Plaintiff appears to allege that the unlawful search of his home based on the purportedly illegal warrant—as well as the evidence and his inculpatory obtained from it—led to his conviction upon plea of guilty, which in turn resulted in his defamation and the loss of his dignity and employment as a utility worker. (*See* SAC at 9.) That is, but for Defendants' alleged unconstitutional search, *pro se* Plaintiff would not have been convicted of criminal possession of controlled substances. But notably, *pro se* Plaintiff does not allege that his conviction has been overturned or called into question. *See Heck,* 512 U.S. at 480–90 ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."). Thus, the instant case is similar to *El v. City of New York*, No. 14-CV-9055-GHW, 2015 WL 1873099 (S.D.N.Y. Apr. 23, 2015). In *El*, the plaintiff alleged that his vehicle was searched by officers without probable cause or consent. *Id.* at *4. Subsequently, the *El* plaintiff was convicted, upon plea of guilty, of possession of narcotics derived from that search. *Id.* The court found that the plaintiff's conviction "stem[med] solely from

evidence obtained in the . . . search of his vehicle—a single episode involving a single search. Under these circumstances, having pleaded guilty to the charges that he knowingly possessed narcotics, success on Plaintiff's § 1983 claim that the search was unlawful would necessarily imply the invalidity of his conviction." *Id.*

In another narcotics search case, *Clayton v. City of Poughkeepsie*, the plaintiff alleged that officers unreasonably searched him. 2007 WL 2154196, at *4. The *Clayton* plaintiff was also convicted, upon plea of guilty, of possession of narcotics derived from that search. *Id.* The court ultimately dismissed all claims predicated on the *Clayton* plaintiff's allegation of unreasonable search and seizure, concluding that "[w]ithout the search and seizure at issue, there would undoubtedly not have been any criminal charge filed against Plaintiff for possession of these narcotics." *Clayton v. City of Poughkeepsie*, No. 06 CIV.4881 SCR, 2007 WL 2154196, at *4 (S.D.N.Y. June 21, 2007).

With that in mind, the Court concludes that *pro se* Plaintiff's § 1983 damages claims arising from the alleged unreasonable search based on the purportedly illegal warrant are barred by *Heck* and must be dismissed with prejudice.

2. Fourth and Fourteenth Amendment claims for declaratory judgment are barred by collateral estoppel

*Pro se* Plaintiff's analogous claims for declaratory judgment are similarly barred by collateral estoppel. "It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel . . . in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell*, 572 F .2d 31, 35 (2d Cir. 1978); *see also Potter v. Port Jervis Police Dep't*, No. 19-CV-10519 (CM), 2020 WL 528823, at *4 (S.D.N.Y. Feb. 3, 2020) ("A criminal defendant is barred from relitigating any issue determined adversely to him in the criminal proceeding, provided that he had a full and fair opportunity to

litigate the issue." (citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 (1982); *Owens v. Treder*, 873 F.2d 604, 606 (2d Cir. 1989) (holding that the doctrine of collateral estoppel "may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding")).

As mentioned above, *pro se* Plaintiff appears to allege that the unlawful search of his home was based on a purportedly illegal warrant. (*See* SAC at 9.) Significantly, he seems to reassert the exact same arguments he advanced in his motion to suppress at state court—namely, that the warrant was illegal on its face because it was issued to members of SOG—some of whom are correctional officers, not police officers—in violation of N.Y. Crim. Proc. Law § 690.25. (*Compare* SAC at 8 ("On April 20, the Orange County Sheriff allowed his undersheriff to execute the illegal warrant with the correctional officers of the Orange County Jail under the name Orange County Sheriff [SOG]."); *with* Lagitch Decl., Ex. D at 4–5 (Dec. 6, 2017 Decision & Order) ("The SOG team, though erroneously listed in the search warrant, did not execute the search warrant. The SOG team merely assisted the [CMPD] for approximately five minutes by gaining entry to the premises and securing the scene.").)

As the County Defendants correctly point out, "the validity of the search warrant on the grounds that individuals other than police officers were part of the team that executed the warrant has been raised and decided *three* times—first by the Orange County Court and then by the Second Department on two separate occasions." (County Mot. at 17; *see also* Lagitch Decl., Ex. D at 4–5 (Dec. 6, 2017 Decision & Order) ("The search, discovery, and seizure all were conducted pursuant to a lawfully issued search warrant addressed to police officers of the [CMPD]. The erroneous listing of the SOG team on the search warrant did not invalidate it.")); *Ward I*, 110 N.Y.S.3d at 454 ("[W]e conclude that the participation by members of the [SOG] in the execution of the search

warrant did not invalidate the search or otherwise require suppression of the physical evidence at issue."); *Ward II*, 123 N.Y.S.3d at 637 (same).

Accordingly, the Court concludes that (1) Defendants have established that the validity of the search warrant in this case "was actually and necessarily decided" by the state courts in prior proceedings; and (2) *pro se* Plaintiff fails to establish that he did not have a full and fair opportunity to litigate this issue in state court. Thus, *pro se* Plaintiff's claims § 1983 claims for declaratory judgment arising from the alleged unreasonable search based on the purportedly illegal warrant are barred under collateral estoppel and must be dismissed with prejudice.[3]

*B. Self-Incrimination Claims*

The Court next considers *pro se* Plaintiff's Fifth Amendment claims for damages and declaratory judgment. The Court liberally construes *pro se* Plaintiff to allege that, at some point after Defendants' search uncovered the illegal controlled substances, Defendants elicited from him, in violation of his Fifth Amendment right against self-incrimination, the following statement: "That's it you got me, that's crack. . . . The crack is mine." (SAC at 8 (asserting violation of his Fifth Amendment rights); Lagitch Decl., Ex. D at 5 (Dec. 6, 2017 Decision & Order).)

But *pro se* Plaintiff's damages claim for this alleged violation is also barred by *Heck*, because "a claim for deprivation of the right against self-incrimination is a direct challenge to the sufficiency of the evidence which led to Plaintiff's conviction, and necessarily bears on the validity of Plaintiff's underlying conviction." *Martinez v. DeMarco*, No. 13CV4209JFBAKT, 2018 WL 1115150, at *1 (E.D.N.Y. Feb. 26, 2018) (internal quotations omitted); *see also Shabazz v.*

[3] Furthermore, the Court notes that *pro se* Plaintiff fails to allege how exactly his right to be free from reasonable searches and seizures under the Fourth Amendment is implicated by the violation of a *state criminal procedure law* providing that only police officers are authorized to execute a search warrant. N.Y. Crim. Proc. Law § 690.25. In other words, *pro se* plaintiff points to no case law indicating how Defendants, by violating N.Y. Crim. Proc. Law § 690.25, "have deprived him of a right secured by the Constitution or laws of the United States" *Giordano*, 274 F.3d at 750 (quotation marks and citations omitted).

*Johnson City Police Dep't*, No. 318CV570MADDEP, 2019 WL 2617016, at *5 (N.D.N.Y. June 26, 2019) (concluding that claim that a statement was coerced in violation of *Miranda* and used against plaintiff at trial was subject to dismissal under *Heck* because a judgment in Plaintiff's favor would "necessarily imply the invalidity of Plaintiff's conviction or sentence").

*Pro se* Plaintiff's analogous claim for declaratory judgment is similarly barred by collateral estoppel because the Orange County Court and the Second Department—on both occasions—held that his inculpatory statements were spontaneous utterances that he made thirty minutes after Defendants read him his *Miranda* rights. (*See* Lagitch Decl., Ex. D at 4–5 (Dec. 6, 2017 Decision & Order)); *Ward I*, 110 N.Y.S.3d at 455; *Ward II*, 123 N.Y.S.3d at 637. He also fails to establish that he did not have a full and fair opportunity to litigate this issue in state court.

In fact, *pro se* Plaintiff cannot even allege a viable § 1983 claim based on the alleged violation of his right to self-incrimination as his spontaneous inculpatory utterances were not used against him in the state criminal proceeding because he pleaded guilty. *See, e.g.*, *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (no viable § 1983 claim where petitioner was "never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against in him a criminal case"); *Higazy v. Templeton*, 505 F.3d 161, 172–72 (2d Cir. 2007) (analyzing *Chavez*'s conclusion that "an officer could not be subjected to civil liability for an alleged violation of the privilege against compelled self-incrimination where the coerced statement is not thereafter used against the person who gave the statement").

Therefore, because *pro se* Plaintiff's § 1983 claims arising from the alleged violation of his Fifth Amendment right to self-incrimination fail as a matter of law, they must be dismissed with prejudice.

**II. Municipal liability under § 1983**

Finally, Defendants also move to dismiss what could be liberally construed as *pro se* Plaintiff's remaining *Monell* claim under § 1983 based on an alleged municipal "custom" that caused the deprivation of his constitutional rights. (*See* SAC at 10.) To establish a *Monell* claim against the City of Middletown and the County of Orange, *pro se* Plaintiff must both "identify a municipal 'policy' or 'custom' that caused [his] injury" and "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., OK v. Brown*, 520 U.S. 397, 403–04 (1997).

Here, however, the SAC is devoid of sufficient factual allegations regarding the liability from either the City of Middletown or the County of Orange. Instead, his allegations on municipal liability consist entirely of "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555. For example, the following is the only paragraph in which *pro se* Plaintiff includes allegations purportedly supporting his *Monell* claim:

> [F]irst illegally searching downstairs of plaintiff's home. Then [SOG] started upstairs in camouflage fatigues, guns drawn, with flashlights in the dark, and use of vulgar language scaring plaintiff and family and rounding up plaintiff and his family with guns drawn room by room to be escorted by guns downstairs and detained while the search was conducted throughout plaintiff's whole house. This custom was a violation of plaintiff's due process, prohibition of illegal searches, and equal protection of the laws, due to the negligence of the supervisors of the mentioned defendants and the supervisor in the procedure to obtain the illegal warrant . . . .

(SAC at 10.) These assertions are wholly insufficient to state a claim of liability under § 1983 against either the City of Middletown or the County of Orange.

Moreover, to the extent that *pro se* Plaintiff claims that either the City of Middletown, the County of Orange, Carl Dubois (as Orange County Sheriff), Kenneth Decker (as Orange County Jail Administrator of Corrections), or Ramon Bethancourt (as Chief of the CMPD) are liable under the doctrine of respondeat superior (*see* SAC at 9), his argument is unavailing. It is well established

that there is no respondeat superior liability under § 1983, and hence, that these particular defendants would be liable under § 1983 only for their own actions. *See El*, 2015 WL 1873099, at *7 (citing *Monell*, 436 U.S. at 694). Therefore, as *pro se* Plaintiff fails to adequately plead a *Monell* claim against Defendants, the Court dismisses such claim. *See El*, 2015 WL 1873099, at *7.

Indeed, considering that *pro se* Plaintiff cannot state a cognizable claim for any alleged violation of his constitutional rights unless his conviction is invalidated, it follows then, that he also cannot state a claim that a municipal policy or custom caused the violation of such rights. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (*Monell* "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 550 (S.D.N.Y. 2014) ("[A]bsent an underlying constitutional violation, a *Monell* claim cannot lie.").

**III. Leave to Amend**

As a final matter, although *pro se* plaintiffs are generally given leave to amend a deficient complaint, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999), a district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Milanese v. Rust—Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility.")While courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, *see In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008), leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim, *see Valle v. Police Dep't Cnty. of Suffolk Cent. Records*, No. 10–CV–2847, 2010 WL 3958432, at *2 (E.D.N.Y. Oct. 7, 2010).

The Court finds that to be the case here. For the reasons articulated above, the Court concludes that, unless *pro se* Plaintiff's conviction is invalidated, it would be futile to grant him leave to replead his §1983 claims for alleged violations of his rights under the Fourth, Fifth, and Fourteenth Amendments. *See El*, 2015 WL 1873099, at *8.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss (ECF Nos. 80 & 86) and DISMISSES *pro se* Plaintiff's Second Amended Complaint in its entirety without leave to replead. The Clerk of the Court is instructed to enter judgment accordingly and to close the case.

The Court also certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motions at ECF Nos. 80, 86, and this action. The Clerk of the Court is further directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and file proof of service on the docket.

Dated: February 24, 2022
White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge